GUSTAV SCHMITT v. POSTAL TELEGRAPH CABLE COMPANY, Appellant.

Telegraphs and telephones: DELIVERY: NEGLIGENCE: EVIDENCE. Evi-
1   dence held to require submission of defendant's negligent delay in delivering a death message, addressed to the post office of the sendee and in care of the mail carrier on a certain rural route on which the addressee lived.

Same: MEASURE OF DAMAGES. The measure of damages for negligent
2   delay in the delivery of a telegram in this state, forwarded from another state, is governed by the law of the forum and not that of the foreign state.

Same: NEGLIGENT DELAY: RIGHT OF ACTION. An action either upon
3   contract or tort can be maintained for negligent delay in the delivery of a telegram.

*Appeal from Calhoun District Court.*—HON. M. E. HUTCH-
INSON, Judge.

TUESDAY, APRIL 7, 1914.

ACTION for damages resulted in judgment against de-
fendant, from which it appeals.—*Affirmed.*

*E. C. Stevenson,* for appellant.

*W. E. Gray* and *M. W. Frick,* for appellee.

LADD, C. J.—I. Iva Schmitt, who was eight years old,
and had lived at the Orphans' Home, Hoyleton, Ill., since
her mother's death, became sick with "blood poison" Au-

1. TELEGRAPHS
AND TELE-
PHONES : de-
livery : negli-
gence : evi-
dence.

gust 14, 1912, and, as recovery seemed doubt-
ful, the superintendent delivered to the de-
fendant's agent at that place at 9:45 o'clock
a. m. of August 24, 1912, for transmission to
her father, the following telegram: "Hoyleton, Ill., 8—24—
1912. Gustav Schmitt c/o Rural Route 4. Rockwell City,
Iowa, via Fort Dodge, Iowa. Iva is very sick, come at once.
J. H. Koenig." The telegram reached Ft. Dodge, Iowa, at
12:45 o'clock p. m. of the same day, and an effort was made
to reach the sendee at Rockwell City by telephone. Defend-
ant's employees testified that the operator at that place re-
ported no one of that name was on rural route 4; that she
inquired at the post office, hotels, and business places, but no
such person was found. They then requested the operator
at Hoyleton, Ill., for a better address, and were directed to
deliver to "Rural Mail Carrier Route No. 4." This was not
sent until the next day at 10:35 o'clock in the forenoon, and
at about the same time another telegram was sent: "Gustav
Schmitt c/o Rural Mail Carrier Route 4. Rockwell City,
Iowa via Fort Dodge, Iowa. Iva died yesterday, be buried
Monday 1 p. m. J. H. Koenig."

The first message was mailed at Ft. Dodge in an envelope

addressed to Schmitt at Rockwell City in the forenoon of August 25th, and the second one in the afternoon of the same day, and both were delivered to him at the home of Frank E. Conrad, where he was employed as a laborer on rural route No. 4, about three and one-half miles from Rockwell City, at 1 o'clock p. m. of the 26th. Other evidence tended to show that, had any one inquired at the post office in Rockwell City, he would have been informed that Schmitt lived at Conrad's house; that, had the telegram been delivered to the mail carrier as directed, he would have telephoned to Schmitt at once, as Conrad had a telephone in his house connected with Rockwell City; and that, had the message been delivered on the 24th, Schmitt would have reached Hoyleton in time for the funeral, which occurred at 2 o'clock on the 26th, and, if delivered Sunday, he would have had the funeral delayed until he could have attended. No question is raised, as there could not well be, but that the issue of unreasonable delay was for the jury. It was not important that defendant's line did not extend beyond Ft. Dodge, for it undertook to deliver on rural route 4 out of Rockwell City. The address directed the place of inquiry. Had this been made at the post office, according to the postmaster, Schmitt's location would have been given. Had the officers of the post office not known his whereabouts, the mail carrier could have given the information, and quite naturally would have been the person an intelligent inquirer would next have sought. The expenses of delivery had been guaranteed by the sender, and the jury might well have found the defendant was guilty of a breach of duty in failing to promptly deliver.

II. Counsel for appellant argue that, inasmuch as the telegram was delivered for transmission in Illinois, the measure of recovery would be governed by the laws of that state, and, as thereunder damages are not allowed for mental anguish disconnected from physical injury, the verdict should have been for defendant. Were this an action *ex contractu*, little difficulty would be experi-

2. Same: measure of damages.

enced in determining the point, but, as the action is one sounding in tort, it would seem the law where the breach of duty occurred would determine the measure of damages, though authorities are not wanting which hold that, as the wrong grew out of and is based on a breach of contract, the *lex loci contractus* should prevail. This, however, is too narrow a view, for it overlooks the fact that the breach is of a public duty owing by the telegraph company as a common carrier of intelligence. This was pointed out by Mr. Thompson in his work on Electricity, where it is said: "The true view which seems to sustain the right of action in the receiver of the message or in the person addressed where it is not delivered, is one which elevates the question above the plane of mere purity of contract and places it where it belongs, upon the public duty which the telegraph company owes to any one person beneficially interested in the message, whether the sender or his principal, where he is agent, or the receiver, or his principal, where he is the agent." Section 427, Thompson on Electricity.

This court is committed to the doctrine that either an action *ex delictu* or *ex contractu* may be maintained for a breach of the company's duty to transmit 3. Same: negligent delay; right of action.  promptly. *Cowan v. Telegraph Co.*, 122 Iowa, 379; *Wells v. Telegraph Co.*, 144 Iowa, 605; *Mentzer v. Tel. Co.*, 93 Iowa, 752.

Moreover, section 2162, Code, declares that: "Any person employed in transmitting messages by telegraph . . . must do so with fidelity and without any unreasonable delay." Section 2163, Code. The proprietor of a telegraph line is "liable for all mistakes in transmitting or receiving messages made by any person in his employment, or for any unreasonable delay in their transmission or delivery, and for all damages resulting from failure to perform the foregoing or any other duty required by law." The particular breach of contract occurred in this state, though of a contract made in the state of Illinois. The negligence occurred in this state,

though it consisted in breaching a duty undertaken in that state. The wrong complained of, occurring in Iowa, consisted of a violation not only of the defendant's duty as a common carrier of intelligence but of defendant's statutory duty as well, and, according to the great weight of authority and sound reason, the measure of the sendee's recovery was properly held to be governed by the laws of this state. *Western Union Tel. Co. v. Hill,* 163 Ala. 18 (50 South. 248, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058); *Gray v. Tel. Co.,* 108 Tenn. 39 (64 S. W. 1063, 56 L. R. A. 301, 91 Am. Rep. 707); *Howard v. Western Union Tel. Co.,* 119 Ky. 625 (84 S. W. 764, 86 S. W. 982, 7 Ann. Cas. 1065); *Western U. Tel. Co. v. Ford,* 77 Ark. 531 (92 S. W. 528); 27 Am. & Eng. Ency. of Law (2d Ed.) 1079. See 37 Cyc. 1712. See, also, *Brewster v. Ry. Co.,* 114 Iowa, 144; *Dorr Cattle Co. v. Des Moines National Bank,* 127 Iowa, 153.

There is nothing in *Markley v. W. U. Tel. Co.,* 151 Iowa, 612, to the contrary. It does lay down the rule that recovery for damages may be had in the state from which the telegram is sent, although not recoverable in the state where it was to be delivered, even though the breach were in the latter state, saying: "No matter whether the action be *ex delictu* or *ex contractu,* the duty owing by the defendant was a public one growing out of contract, and the measure of damages, as a rule, is governed by the law of the forum or the *lex loci contractus.*" In such a case the law is the same, and what was added excludes any possible misconstruction: "The question would be much more difficult if the action were brought in the state allowing such recovery upon a contract made in a state where no such recovery is permitted"—a case like that before us. There was no error in the ruling of the trial court, and that the measure of damages was that of the forum.

We are not inclined to regard the damages allowed excessive.

These are the only points raised in the appellant's open-

ing argument, and we are not permitted to review those raised in the reply for the first time.

There was no error and the judgment is—*Affirmed.*

Weaver, Evans, and Gaynor, JJ., concurring.